UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TPK TOUCH SOLUTIONS, INC,

    Plaintiff,

    v.

WINTEK ELECTRO-OPTICS
CORPORTATION, et al.,

    Defendants.

Case No.  13-cv-02218-JST

**ORDER DENYING MOTION TO STAY PENDING *EX PARTE* REEXAMINATION**

Re: ECF No. 28

Before the Court is Wintek Corporation's Motion to Stay Proceedings Pending Reexamination.  ECF No. 28.  The Court will deny the motion.[1]

## I.  BACKGROUND

Plaintiff TPK Touch Solutions, Inc. filed this action on May 15, 2013, Compl., ECF No. 1, asserting claims for patent infringement against Defendants Wintek Corp. and its subsidiary Wintek Electro-Optics Corp. (collectively, "Wintek").  Plaintiff alleges that Wintek sells touchscreen panels that infringe TPK's United States Patent No. 8,217,902.  Compl. ¶¶ 4–6.  Two days after the Complaint was filed, a request for *ex parte* reexamination of all sixty-eight claims of the '902 patent was made to the United States Patent and Trademark Office ("PTO").  Mosko Decl. ISO Mot. to Stay, ECF No. 28-1, Ex. 1, § V p. 11 *et seq.*

Defendants moved to dismiss on the basis of improper venue, ECF No. 14, and insufficient service, ECF No. 15.  TPK responded on July 29, 2013.  ECF Nos. 21–22.  The PTO ordered reexamination on June 20, 2013.  Mosko Decl., Ex. 2, p. 4.  The parties then stipulated to Wintek's withdrawal of the motions.  ECF No. 24.  Defendants answered the complaint and asserted non-infringement and invalidity declaratory relief counterclaims on August 16, 2013.

_____

[1] The Court finds this motion suitable for disposition without oral argument.  Civil L.R. 7-1(b).

ECF Nos. 26–27.  Wintek Corp. filed the instant motion that same day, ECF No. 28, and Wintek Electro-Optics joined the motion, ECF No. 29.

In granting the request for *ex parte* reexamination, the PTO noted that four of the six references in the application for reexamination were of record in the '902 patent — one led the examiner to reject certain claims during the prosecution of the patent, two appeared on the face of the patent, and one was discussed in the specification.  Mosko Decl., Ex. 2, p. 5.  The request for reexamination supplies two additional references.  The PTO ordered reexamination because the combination of the new and old references "presents new, non-cumulative technological teachings that were not previously considered or discussed on the record during the prosecution of the '902 patent," which therefore presents substantial new questions of patentability.  Id.

## II.   ANALYSIS

Patents are presumed to be valid unless there is "clear and convincing evidence to the contrary."  Enzo Biochem, Inc. v. Gen–Probe, Inc., 424 F.3d 1276, 1281 (Fed. Cir. 2005).  However, any person may file a petition for *ex parte* reexamination of a patent with the PTO on the basis of prior art.  35 U.S.C. § 302.  The PTO must then determine whether a "substantial new question of patentability affecting any claim of the patent concerned is raised by the request."  35 U.S.C. § 303(a).  If reexamination of a patent is granted, the PTO affords the patent owner an opportunity to file a statement, "including any amendment to his patent and new claim or claims he may wish to propose" prior to issuing a decision.  35 U.S.C. § 304.  Following responses by the patent owner and reexamination requestor, the PTO must reexamine the patent "according to the procedures established for initial examination" with "special dispatch."  35 U.S.C. § 305.

"Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination."  Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988) (internal citations omitted).  Though a stay is never required, it may be "particularly justified where the outcome of the reexamination would be likely to assist the court in determining patent validity and, if the claims were canceled in the reexamination, would eliminate the need to try the infringement issue."  In re Cygnus Telecomms. Tech., LLC, Patent Litig., 385 F. Supp. 2d 1022, 1023 (N.D. Cal. 2005) (citing Gould v. Control Laser Corp.,

1   705 F.2d 1340, 1342 (Fed. Cir. 1983)).  Indeed, "an auxiliary function [of the reexamination] is to

2   free the court from any need to consider prior art without the benefit of the PTO's initial

3   consideration."  In re Etter, 756 F.2d 852, 857 (Fed. Cir. 1985).

4          In determining whether to stay a case pending reexamination, courts consider the following

5   factors:  (1) whether discovery is complete and whether a trial date has been set; (2) whether a stay

6   would simplify the issues in question and trial of the case; and (3) whether a stay would unduly

7   prejudice or present a clear tactical disadvantage to the non-moving party.  Cygnus, 385 F. Supp.

8   2d at 1023.

9          **A.      Stage of Proceedings**

10         The first factor — whether discovery is complete and whether a trial date has been set —

11  weighs in favor of a stay in this case, as Defendants recently filed their answers, no discovery

12  requests have been served, and the Court has not yet held an initial case management conference

13  or scheduled a claim construction hearing.  See, e.g., Microsoft Corp. v. Tivo Inc., No. 10-cv-

14  00240-LHK, 2011 WL 1748428, at *6 (N.D. Cal. May 6, 2011) ("Many courts have stayed patent

15  infringement suits pending reexamination even after discovery was complete.").

16         **B.      Simplification of the Issues and Trial of the Case**

17         Where the *ex parte* reexamination will address all of the claims at issue in the litigation,

18  there is some probability that the reexamination will simplify the issues in question, and the trial

19  of the case.  AT&T Intellectual Prop. I v. Tivo, Inc., 774 F. Supp. 2d 1049, 1053 (N.D. Cal. 2011).

20  Courts recognize that "[i]f any of the asserted claims are canceled, the ordeals of claim

21  construction and trial will become unnecessary for those claims."  Richtek Tech. Corp. v. UPI

22  Semiconductor Corp., No. 09–cv–05659-WHA, 2011 WL 445509, at *3 (N.D. Cal. Feb. 3, 2011).

23  Wintek adopts this theme in its motion, urging the Court to grant a stay because "reexamination

24  will, in all likelihood, narrow the issues in this case — if not eliminate TPK's patent claims

25  altogether — paving the way for a well-focused, efficient resolution of the parties' dispute."  Mot.,

26  ECF No. 28 p. 8.

27

28

United States District Court
Northern District of California

3

United States District Court
Northern District of California

There are countervailing considerations, however.[2]  First, an *ex parte* proceeding is not necessarily final, because *ex parte* proceedings allow for appeals to the Patent Trial and Appeal Board ("PTAB"), and subsequently to the Federal Circuit.   *See* 35 U.S.C. §§ 134 and 141; Network Appliance Inc. v. Sun Microsystems Inc., C-07-06053 EDL, 2008 WL 2168917 n.1 (N.D. Cal. May 23, 2008).  "Second, *inter partes* proceedings impose estoppel upon third-party requesters, which prevent them from later re-litigating the same issues that were raised, or could have been raised, during the *inter partes* proceedings."  Network Appliance, 2008 WL 2168917 at n.1.  *Ex parte* reexamination offers no such protection.  Thus, the fact that the PTO might decide an issue one way does not bar any party from arguing the contrary position in court.  Third, *ex parte* reexamination will not address or resolve issues of invalidity based on 35 U.S.C. sections 101 or 112.  Other courts have recognized these limitations when deciding that a stay was not warranted.  See, e.g., Interwoven, Inc. v. Vertical Computer Sys., Inc., No. 10-cv-04645-RS, 2012 WL 761692, at *3 (N.D. Cal. Mar. 8, 2012) ("simplification of issues is unlikely to result" because of lack of estoppel, low number of reexaminations resulting in wholesale patent cancellation, and narrow scope of proceedings); Tric Tools, Inc. v. TT Technologies, Inc., No. 12-cv-3490-YGR, 2012 WL 5289409, at *2 (N.D. Cal. Oct. 25, 2012) on reconsideration, No. 12-cv-3490-YGR, 2012 WL 6087483 (N.D. Cal. Dec. 6, 2012) (denying stay prior to and after PTO granted petitions for *ex parte* reexamination); Avago Tech. Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc., No. 10-cv-02863-EJD, 2011 WL 3267768, at *4–5 (N.D. Cal. July 28, 2011) (contrasting *ex parte*

---

[2] TPK advances two additional reasons to deny a stay, neither of which is persuasive.  First, TPK argues that that it intends to amend its complaint to add infringement contentions regarding a second patent not currently before the Court or at issue before PTO (the "'935 Patent").  The Court can only decide Defendant's stay motion based on the facts as they presently exist, and so does not consider a hypothetical case in which the complaint cites an additional patent.

Second, TPK argues that most of the references presented to PTO in the petition for reexamination were considered by PTO in the original prosecution of the '902 patent.  While that is true, the order granting reexamination demonstrates that PTO is aware of the "old art" and nevertheless, pursuant to 35 U.S.C. § 303(a) and 312(a), ordered reexamination based on substantial new questions of patentability presented by the combination of the old art and the references not previously considered by the examiner.  Mosko Decl., Ex. 2, ECF No. 28-3 p. 6.

reexamination procedure with *inter partes* proceedings).[3]

Taking these considerations into account, the Court concludes the second factor weighs against a stay in this case.  The *ex parte* reexamination procedure, unlike the *inter partes* procedure, takes longer,[4] is less likely to result in material changes in the litigation, and addresses only certain aspects of the case.  In addition, absent cancellation of all of the claims, Defendant will be free to re-argue invalidity before this Court following a years-long stay in favor of the PTO reexamination.  That eventuality does little to simplify the issues or streamline the litigation.

### C.    Prejudice and Disadvantage

The last factor is "whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party."  Courts have often found prejudice where, as here, the non-moving party is a direct competitor of the movant.  See, e.g., Tric Tools, 2012 WL 5289409, at *2 (citing Allergan Inc. v. Cayman Chemical Co., No. 07-cv-1316-JVS, 2009 WL 8591844 at *1 (C.D. Cal. 2009)); Interwoven, No. 10-cv-04645-RS, 2012 WL 761692, at *3 (N.D. Cal. Mar. 8, 2012) ("The parties' status as direct competitors also weighs against a stay because it increases the likelihood of undue prejudice"; also finding prejudice because alleged infringer waited until after unfavorable claim construction ruling to request reexamination); Avago, 2011 WL 3267768, at *5 (citing Acumed LLC v. Stryker Corp., 551 F.3d 1323, 1327–28 (Fed. Cir. 2008) ("Unlike patent infringement actions involving non-practicing entities, infringement among competitors can cause harm in the marketplace that is not compensable by readily calculable money damages.").

The risk of prejudice is compounded by the relatively long period of time required to complete *ex parte* reexamination.  Recent statistics indicate that an *ex parte* reexamination process takes, on average, 32.5 months to complete, and that appeals take, on average, another 24 months.

---

[3] Some courts have conditioned a stay pending *ex parte* reexamination on the accused infringer's agreement to be bound by the PTO's findings to eliminate the risk of unnecessary duplication. See, e.g., QPSX Developments 5 Pty Ltd. v. Ciena Corp., No. 07-cv-118-CE, 2009 WL 8590964, at *2 (E.D. Tex. 2009); Roblor Marketing Group, Inc. v. GPS Industries, Inc., No. 08-cv-21496, 2008 WL 5210046, *3 (S.D. Fla. 2008).  Because the Court denies the present motion to stay, it does not consider whether such a condition would be necessary or useful.

[4] Plaintiff's argument regarding the delay caused by a stay during *ex parte* reexamination is addressed below.

United States District Court
Northern District of California

1    Thus, if the Court were to grant a stay, it would potentially be delaying relief for almost five years.

2           Although Wintek impliedly concedes that the risk of prejudice is more acute where the

3    patent owner and accused infringer are direct competitors, Wintek argues that this prejudice is

4    attenuated because Plaintiff and Defendant are only two of several competitors in the touch-screen

5    market.  Reply, ECF No. 36 p. 4.  Wintek argues that the high risk of prejudice is "significantly

6    reduced" in markets that are highly competitive and include a large number of sellers.  Wintek

7    supplies no authority in support of this argument[5] and the Court is not persuaded by it.  Rather, the

8    Court agrees with those courts that have found prejudice likely, and been reluctant to issue a stay,

9    where the parties are direct competitors.  <u>See, e.g.</u>, <u>Tric Tools</u>, 2012 WL 5289409, at *2–3.

10          Wintek also argues that TPK's failure to seek a preliminary injunction suggests the risk of

11   prejudice is low.  The Court disagrees.  A party may decide to forego seeking a preliminary

12   injunction for a variety of reasons having nothing to do with its view of the merits.  <u>See, e.g.</u>,

13   <u>Avago</u>, 2011 WL 3267768, at *6 ("This contention is flawed.  As IPtronics points out, Avago

14   might have other reasons for deciding not to pursue injunctive relief at this stage—for example,

15   the difficulty of showing a likelihood of success on the merits while its patents are in

16   reexamination.  On IPtronics' motion to stay, the Court will not hold against Avago its decision to

17   spare the parties more litigation.").

18          In short, the Court finds that this factor weighs against the granting of a stay.

19   **III.    WINTEK'S PETITION FOR *INTER PARTES* REVIEW**

20          After TPK filed its opposition to Wintek's motion for a stay – noting the disadvantages of

21   *ex parte* reexamination relative to *inter partes* review – Wintek filed a petition for *inter partes*

22   review of the '902 patent.  Reply p. 5 ("On September 4, 2013, two IPRs were filed with the PTO

23   on the only patent at issue in this case . . . . [s]o, for the reasons TPK asserted in the Opposition —

24   that had IPRs been filed a stay would have been appropriate — this Court should now grant

25   Wintek's Motion to Stay.").  In its reply brief, Wintek alerted the Court to this development and

26   asked the Court to grant its motion for stay on this additional ground.

27   _____

28   [5] Wintek may be conflating the risk of harm to consumers (which in an antitrust context is higher
     when a negatively-impacted supplier's market share is higher) to the risk of harm to TPK.

United States District Court
Northern District of California

The Court does not consider new facts or argument made for the first time in a reply brief. "It is inappropriate to consider arguments raised for the first time in a reply brief." Ass'n of Irritated Residents v. C & R Vanderham Dairy, 435 F. Supp. 2d 1078, 1089 (E.D. Cal. 2006).  If Wintek believes that a motion for stay based on its filing of an *inter partes* review request would be well taken, it remains free to file it.  This order does not address that question.

## IV.  CONCLUSION

Considering the relevant factors in their entirety, and because the second and third factors weigh against granting a stay, the Court hereby DENIES Wintek's Motion to Stay Pending *Ex Parte* Reexamination.

**IT IS SO ORDERED.**

Dated: September 16, 2013

_____
JON S. TIGAR
United States District Judge