UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TPK TOUCH SOLUTIONS, INC, <br><br> Plaintiff, <br><br> v. <br><br> WINTEK ELECTRO-OPTICS CORPORATION, et al., <br><br> Defendants. | Case No. 13-cv-02218-JST <br><br> **ORDER DENYING MOTION TO STAY PENDING INTER PARTES REVIEW** <br><br> Re: ECF No. 45 |

Before the Court is Wintek Corporation's Motion to Stay Proceedings Pending *Inter Partes* Review. ECF No. 45. The Court will deny the motion.

I.  **BACKGROUND**

Plaintiff TPK Touch Solutions, Inc. filed this action on May 15, 2013, Compl., ECF No. 1, asserting claims for patent infringement against Defendants Wintek Corp. and its subsidiary Wintek Electro-Optics Corp. (collectively, "Wintek"). Plaintiff alleges that Wintek sells touchscreen panels that infringe TPK's United States Patent No. 8,217,902. Compl. ¶¶ 4–6.

Two days after the Complaint was filed, Wintek petitioned the United States Patent and Trademark Office ("PTO") for *ex parte* reexamination of all sixty-eight claims of the '902 patent. The PTO ordered reexamination on June 20, 2013.

Wintek moved to dismiss on the basis of improper venue, ECF No. 14, and insufficient service, ECF No. 15, on July 15, 2013. TPK responded on July 29, 2013. ECF Nos. 21–22. Wintek thereafter withdrew the motions, ECF No. 24, and then answered the complaint, asserting non-infringement and invalidity declaratory relief counterclaims on August 16, 2013, ECF Nos. 26–27. On the same date, Wintek Corp. filed a motion to stay pending *ex parte* reexamination, ECF No. 28, in which motion Wintek Electro-Optics joined, ECF No. 29.

1    TPK opposed Wintek's motion, among other grounds, on the basis that *ex parte*
2 reexamination was both slower and less final than *inter partes* review ("IPR"), and suggested that
3 Wintek's failure to petition for IPR of the '902 patent was tactical.  Prior to filing its reply, Wintek
4 then filed two petitions for IPR of the '902 patent.

5    The Court denied Wintek's first motion to stay on September 17, 2013.  Am. Order, ECF
6 No. 44 (Sept. 18, 2013).  The Court declined to consider the effect of Wintek's IPR petitions on its
7 first motion to stay because those petitions were filed after TPK filed its opposition, and because
8 Wintek discussed them for the first time in its reply brief.  Am. Order at 6–7.

9    Wintek filed the instant motion to stay on September 26, 2013, on the basis of the two IPR
10 petitions.  Shortly after Wintek filed the motion, the parties stipulated to allow TPK's amendment
11 of its complaint to add allegations of infringement of United States Patent No. 8,283,935 ("the
12 '935 patent").

13    The Court heard argument on the motion on October 31, 2013.

## II.   LEGAL STANDARD

"Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination."  Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988) (internal citations omitted).  While the case law states several general considerations that are helpful in determining whether to order a stay, ultimately the Court must decide stay requests on a case-by-case basis.  Comcast Cable Commc'ns Corp., LLC v. Finisar Corp., No. 06-cv-04206-WHA, 2007 WL 1052883, at *1 (N.D. Cal. Apr. 5, 2007) ("From a case management perspective, the possible benefits must be weighed in each instance against the possible drawbacks.").

Though a stay is never required, it may be "particularly justified where the outcome of the reexamination would be likely to assist the court in determining patent validity and, if the claims were canceled in the reexamination, would eliminate the need to try the infringement issue."  In re Cygnus Telecomms. Tech., LLC, Patent Litig., 385 F. Supp. 2d 1022, 1023 (N.D. Cal. 2005) (citing Gould v. Control Laser Corp., 705 F.2d 1340, 1342 (Fed. Cir. 1983)).  Indeed, "an auxiliary function [of the reexamination] is to free the court from any need to consider prior art

without the benefit of the PTO's initial consideration." In re Etter, 756 F.2d 852, 857 (Fed. Cir. 1985). Nevertheless, "[t]here is no per se rule that patent cases should be stayed pending reexaminations, because such a rule 'would invite parties to unilaterally derail' litigation." Tokuyama Corp. v. Vision Dynamics, LLC, No. 08-cv-2781-SBA, 2008 WL 4452118, at *2 (N.D. Cal. Oct. 3, 2008) (quoting Soverain Software LLC v. Amazon .Com, Inc., 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005)). See also Comcast, 2007 WL 1052883, at *1 ("If litigation were stayed every time a claim in suit undergoes reexamination, federal infringement actions would be dogged by fits and starts. Federal court calendars should not be hijacked in this manner.").

In determining whether to stay a case pending reexamination, courts consider the following factors: (1) the stage and history of the litigation; (2) whether a stay would simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party. Cygnus, 385 F. Supp. 2d at 1023.

### III. ANALYSIS

Pursuant to the Leahy-Smith America Invents Act ("AIA"), Pub. L. 112-29, Sept. 16, 2011, 125 Stat 284, any "person who is not the owner of a patent may file with the [PTO] a petition to institute an *inter partes* review of the patent." 35 U.S.C. § 311(a). IPR petitioners "may request to cancel as unpatentable 1 or more claims of a patent only on a ground that could be raised under [35 U.S.C.] section 102 or 103 and only on the basis of prior art consisting of patents or printed publications." 35 U.S.C. § 311(b).

The AIA was meant "to establish a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs." "Changes to Implement *Inter Partes* Review Proceedings, Post–Grant Review Proceedings, and Transitional Program for Covered Business Method Patents," 77 Fed. Reg. 48680-01, at *48680 (Aug. 14, 2012) (codified at 37 C.F.R. §§ 42.100, *et seq.*). For example, the IPR timeline is more compressed than the timelines under either the predecessor *inter partes* reexamination procedure or the *ex parte* reexamination procedure. An IPR trial may not be instituted if the petitioner files a petition more than one year after it was served with a complaint alleging infringement of the patent. 35 U.S.C. § 315(b). After the petition is filed, the patent owner may, within three months,

3

file a preliminary response "setting forth the reasons why no *inter partes* review should be instituted; alternatively, the patent owner may expedite the proceeding by waiving the preliminary response. 37 C.F.R. § 42.107(a)–(b).

The PTO must decide whether to institute *inter partes* review within three months of the filing of the preliminary response, or, if no response is filed, by the last date on which a response may be filed. 35 U.S.C. § 314(b). Once an IPR trial is instituted, it must be "administered such that pendency before the Board after institution is normally no more than one year. The time can be extended by up to six months for good cause by the Chief Administrative Patent Judge, or adjusted by the Board in the case of joinder." 37 C.F.R. § 42.100.

In order to institute an IPR trial, the PTO must determine that the petition presents "a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition," 35 U.S.C. § 314(a), which is a "more stringent [requirement] than the previous 'substantial new question of patentability' standard." Universal Electronics, Inc. v. Universal Remote Control, Inc., No. 12-cv-00329-AG, 2013 WL 1876459, at *2, ___ F. Supp. 2d ___ (C.D. Cal. May 2, 2013). The petitioner then has the burden of establishing lack of patentability by a preponderance of the evidence. 35 U.S.C. § 316(e). A dissatisfied party may appeal the final written decision of the Patent Trial and Appeal Board to the Federal Circuit Court of Appeals. 35 U.S.C. § 141.

The new IPR procedure became available on September 16, 2012. According to the PTO's statistics, in fiscal year 2013 the PTO instituted IPR trials in roughly 82 percent of petitions on which the PTO had rendered an institution decision. "AIA Progress Statistics," available at uspto.gov/ip/boards/bpai/stats/aia_statistics_10_23_2013.pdf (last accessed Nov. 1, 2013). On average, the PTO has taken 63 days to decide whether to institute an IPR trial from the time the patent owner's preliminary response was due, or from the time it was waived. "A Look at the First Year of *Inter Partes* Review Proceedings Before the United States Patent and Trademark Office," available at ipr-pgr.com/wp-content/uploads/2013/09/IPR-PGR-Report-Vol.-3.pdf (last accessed Nov. 1, 2013). As of October 23, 2013, the PTO had rendered only one final written decision under the new IPR procedure, so statistics concerning the final results of IPR trials are

not available. However, with respect to the patents for which the PTO instituted IPR, it reviewed 88 percent of the total claims challenged in the underlying petitions. Id.

Under the former *inter partes* reexamination procedure, the PTO instituted proceedings for 94 percent of requests filed since 1999. Of those, 11 percent resulted in confirmation of all claims, 42 percent resulted in cancellation or disclaimer of all claims, and 40 percent resulted in a change in some, but not all of the claims. "*Inter Partes* Reexamination Historical Statistics," available at uspto.gov/patents/stats/inter_parte_historical_stats_roll_up_EOY2012.pdf (last accessed Nov. 1, 2013). By contrast, since 1981, 22 percent of *ex parte* reexaminations requested by a third party resulted in confirmation of all claims, 12 percent resulted in cancellation of all claims, and 66 percent resulted in a change of some, but not all claims. "*Ex Parte* Reexamination Historical Statistics," available at uspto.gov/patents/stats/ex_parte_historical_stats_roll_up_EOY2012.pdf (last accessed Nov. 1, 2013).

### A. Stage of Proceedings

The first factor — whether discovery is complete and whether a trial date has been set — weighs in favor of a stay in this case, as Defendants recently filed their answers, discovery has just begun, and the claim construction hearing is not scheduled to occur until July 2014. See, e.g., Microsoft Corp. v. Tivo Inc., No. 10-cv-00240-LHK, 2011 WL 1748428, at *6 (N.D. Cal. May 6, 2011) ("Many courts have stayed patent infringement suits pending reexamination even after discovery was complete.").

### B. Simplification of the Issues and Trial of the Case

The "purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)." Gould v. Control Laser Corp., 705 F.2d 1340, 1342 (Fed. Cir. 1983). Where reexamination will address all of the claims at issue in the litigation, there is some probability that the reexamination will simplify the issues in question, and the trial of the case. AT&T Intellectual Prop. I v. Tivo, Inc., 774 F. Supp. 2d 1049, 1053 (N.D. Cal. 2011). Courts recognize that "[i]f any of the asserted claims are canceled, the ordeals of claim construction and trial will become unnecessary for those claims." Richtek Tech.

Corp. v. UPI Semiconductor Corp., No. 09–cv–05659-WHA, 2011 WL 445509, at *3 (N.D. Cal. Feb. 3, 2011).

In denying Wintek's first motion to stay, the Court observed that *ex parte* reexamination was less likely to simplify the case than IPR because *ex parte* reexamination lacks the estoppel benefits of IPR. See Network Appliance Inc. v. Sun Microsystems Inc., No. 07-cv-06053-EDL, 2008 WL 2168917, at *3 n.1 (N.D. Cal. May 23, 2008); 35 U.S.C. § 315(e)(2) (IPR petitioners "may not assert either in a civil action arising in whole or in part under section 1338 of title 28 or in a proceeding before the International Trade Commission under section 337 of the Tariff Act of 1930 that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that *inter partes* review."). Wintek's second motion to stay resolves that issue. Thus, the Court finds that, if and when the PTO grants IPR, that process is likely to simplify the issues and trial of the case, provided the claims for which trial is instituted are relevant to the underlying action.

The Court also finds, however, that in most cases, the filing of an IPR request *by itself* does not simplify the issues in question and trial of the case.[1] Ultimately, the PTO may not institute IPR proceedings. Even if it does, the Court and the parties cannot know now whether the claims subject to IPR will be the same claims that Plaintiff asserts here. See, e.g., Universal Electronics, 2013 WL 1876459, at *4 ("The undecided status of the petitions clouds the simplification inquiry."). While an IPR proceeding might simplify a case once IPR has been granted, at this point it is too early to draw that conclusion.[2]

---

[1] The Court acknowledges some tension in the caselaw on this point. Some courts have concluded that because there is "at least some promise that certain challenged claims will be struck down or amended if the PTO grants the petitions" for IPR, this factor tips in favor of a stay at the time the IPR is filed. Software Rights Archive, LLC v. Facebook, Inc., No. 12-cv-3970-RMW, 2013 WL 5225522, at *5 (N.D. Cal. Sept. 17, 2013); see also Pi-Net Int'l, Inc. v. Focus Bus. Bank, No. 12-cv-4958-PSG, 2013 WL 4475940, at *4 (N.D. Cal. Aug. 16, 2013) ("some promise that at least certain challenged claims will be struck down"), adhered to in part on reconsideration, 2013 WL 5513333 (Oct. 3, 2013). This Court believes the balance does not shift in that direction until the PTO has granted the application.

[2] At the time the motion was submitted to the Court for decision, there was another reason to question whether Wintek's IPR request regarding the '902 patent would simplify the case: TPK

6

### C. Prejudice and Disadvantage

The last factor is "whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party." Delay alone does not usually constitute undue prejudice, because "parties having protection under the patent statutory framework may not 'complain of the rights afforded to others by that same statutory framework.'" KLA-Tencor Corp. v. Nanometrics, Inc., No. 05-cv-03116-JSW, 2006 WL 708661, at *3 (N.D. Cal. Mar. 16, 2006) (quoting Pegasus Dev. Corp. v. DirecTV, Inc., 2003 WL 21105073, at *2 (D. Del. May 14, 2003)). Nevertheless, in evaluating prejudice, "courts also consider evidence of dilatory motives or tactics, such as when a party unduly delays in seeking reexamination of a patent." Id. Such tactics include seeking reexamination on the "eve of trial or after protracted discovery." Id.

The District of Delaware has adopted a set of four sub-factors for evaluating prejudice that this Court finds helpful: "(1) the timing of the reexamination request; (2) the timing of the request for stay; (3) the status of reexamination proceedings; and (4) the relationship of the parties." Ever Win Int'l Corp. v. Radioshack Corp., 902 F. Supp. 2d 503, 508 (D. Del. 2012).

#### 1. Timing of Reexamination Request and Request for Stay

Because of the delay that may accrue by virtue of the PTO instituting an IPR trial on a patent-in-suit, this Court expects defendants to evaluate whether to file, and then to file, IPR petitions as soon as possible after learning that a patent may be asserted against them. Provided an accused infringer is diligent, delay due to preparing an IPR petition, ascertaining the plaintiff's theories of infringement, or otherwise researching the patents that have been asserted in an action does not unduly prejudice the patent owner.

Here, the Court concludes that Wintek has not been diligent. Wintek had enough information to request IPR immediately after this action was filed, but did not; instead, just two days after the Complaint was filed, Wintek requested *ex parte* reexamination. As the Court observed in a prior order, that procedure both takes considerably longer to resolve than IPR and

---

asserts an additional patent in this case, the '935 patent. Very recently, however, Wintek filed an IPR request as to the '935 patent. See ECF No. 62. Thus, the Court can apply the same factors across the board to the applications for both patents.

lacks its estoppel benefits. Interwoven, Inc. v. Vertical Computer Sys., Inc., No. 10-cv-04645-RS, 2012 WL 761692, at *3 (N.D. Cal. Mar. 8, 2012) ("no such estoppel arises from *ex parte* reexamination"). Wintek filed for IPR only after first filing for *ex parte* reexamination and filing a motion for stay based on *ex parte* reexamination, and only after engaging in additional motion practice that even Wintek appears to have concluded was unnecessary.

As a result of Wintek's delay, the Court and the parties cannot expect a decision from the PTO regarding IPR until early March 2014; had the IPR petition been filed in May 2013, the PTO's decision would likely already be in hand, well before the deadline for Plaintiff's preliminary infringement contentions, and with no effect on the case schedule.[3]

On this record, the Court believes that Wintek's delay in seeking IPR weighs against the granting of a stay. See Affinity Labs of Texas, LLC v. BMW N. Am., LLC, No. 08-cv-164, 2009 WL 8590914, at *2 (E.D. Tex. Feb. 20, 2009) (where defendants filed *ex parte* reexamination request, their "choice guarantees the imposition of additional costs on Affinity Labs, and indicates a lack of desire to resolve the issues in the case in a timely manner.").

### 2. Status of Reexamination Proceedings

The PTO has not decided whether to grant *inter partes* review, so Wintek's request for IPR is at the earliest stage. This sub-factor weighs against a stay. See Tokuyama Corp. v. Vision Dynamics, LLC, No. 08-cv-2781-SBA, 2008 WL 4532565, at *1 (N.D. Cal. Oct. 9, 2008) (distinguishing delay based on mere filing of IPR petition from delay based on ongoing IPR trial).

### 3. Relationship of the Parties

Because TPK and Wintek are direct competitors, the risk of prejudice is higher to the non-

---

[3] The Court emphasizes the significance to the Court's ruling of Wintek's ability to seek IPR earlier and its conscious choice not to do so. On different facts, a delay of the same length in seeking IPR might be considered reasonable. See Avago Technologies Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc., 10-cv-02863-EJD, 2011 WL 3267768, at *5 (N.D. Cal. July 28, 2011) ("[T]he eight month interval between Plaintiff's filing of the Complaint and Defendant's Motion to Stay is neither so long as to raise suspicion of strategic delay nor so short as to establish obvious good faith on the part of the Defendant.")

moving party than it would be otherwise.  See, e.g., Tric Tools, Inc. v. TT Technologies, Inc., No. 12-cv-3490-YGR, 2012 WL 5289409, at *2 (N.D. Cal. Oct. 25, 2012) on reconsideration, 2012 WL 6087483 (N.D. Cal. Dec. 6, 2012) (citing Allergan Inc. v. Cayman Chemical Co., No. 07-cv-1316-JVS, 2009 WL 8591844 at *1 (C.D. Cal. 2009)); Interwoven, 2012 WL 761692, at *3 ("The parties' status as direct competitors also weighs against a stay because it increases the likelihood of undue prejudice.").

In Wintek's first motion to stay, it argued that the risk of prejudice is "significantly reduced" in markets that are highly competitive and include a large number of sellers, citing Inogen, Inc. v. Inova Labs, Inc., No. 11-cv-1692-JST, 2012 WL 4748803 at *3 (C.D. Cal. Mar. 20, 2012).  The Court rejected the argument as applied to this case, noting that Wintek did not propose a method for measuring the degree to which the risk of harm had allegedly been diluted.  Wintek makes the same argument again here, arguing that because "at least 13 other companies compete in the market for capacitive touch screens," TPK would not suffer any prejudice from a stay.

The Court will reject the argument again, for two reasons.  First, as before, Wintek fails to present evidence *quantifying* the alleged reduction in competitive prejudice.  Second, and more importantly, the evidence submitted by both parties suggests that (1) the market for touch screens is highly segmented, not a single monolithic market; (2) the market is dynamic and rapidly evolving; (3) Plaintiff has recently lost market share to Defendant; and (4) within the relevant high-end segments of that market, Wintek and TPK have few or no other competitors.  One industry publication noted, "TPK's main competitor throughout 2013 is expected to be Wintek," and another stated, "the dominant suppliers in 2012 were No. 1 TPK and No. 2 Wintek, which are far ahead of the other suppliers in terms of revenue."  The Daiwa Capital Markets report, which Wintek submitted in support of its motion, notes that there are only three companies manufacturing high end, "G/G" touch screens — and two of them are Wintek and TPK.  Thus, to the extent the evidence points in either direction, it points toward the potential for competitive harm to TPK from the issuance of a stay.

While there may be a case in which the number of market participants by itself compels the Court to find an absence of competitive harm, this is not that case.  The Court finds that the

relationship of the parties weighs against a stay, and that a stay would unduly prejudice Plaintiff because of the risk that Plaintiff may suffer harm "that is not compensable by readily calculable money damages." Avago, supra, n.3, 2011 WL 3267768, at *5 (citing Acumed LLC v. Stryker Corp., 551 F.3d 1323, 1327–28 (Fed. Cir. 2008)).

Because each sub-factor weighs in favor of a finding of undue prejudice, the Court finds that the third factor weighs strongly against a stay.

## IV. CONCLUSION

Considering the relevant factors in their entirety, and because the second and third factors weigh against granting a stay, the Court hereby DENIES Wintek's Motion to Stay Pending *Inter Partes* Review.

**IT IS SO ORDERED.**

Dated: November 13, 2013

_____
JON S. TIGAR
United States District Judge